J. Noah Hagey, Esq. (SBN: 262331)
　hagey@braunhagey.com
Mark P. Fickes, Esq. (SBN: 178570)
　fickes@braunhagey.com
Alfredo W. Amoedo, Esq. (SBN: 287901)
　amoedo@braunhagey.com
BRAUNHAGEY & BORDEN LLP
220 Sansome Street, 2nd Floor
San Francisco, CA 94104
Telephone: (415) 599-0210
Facsimile: (415) 276-1808

ATTORNEYS FOR PLAINTIFF TAGGED, INC.

FILED
MAY 16 2013
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

JSC

TAGGED, INC., a Delaware corporation,

　　PLAINTIFF,

　　v.

ROSTISLAV "ROSS" GOLDENBERG and Does 1 through 200 as alter egos, affiliate spammers, programs, and fraudulently marketed websites,

　　DEFENDANTS.

Case No. CV 13 2256

**COMPLAINT FOR:**

(1) **VIOLATION OF CAN-SPAM, 15 U.S.C. § 7701**, *et seq.*;
(2) **VIOLATION OF CFAA, 18 U.S.C. § 1030**;
(3) **VIOLATION OF CAL. BUS. & PROF. CODE § 17529.5**;
(4) **VIOLATION OF CAL. PENAL CODE § 502**;
(5) **FRAUD**; and
(6) **VIOLATION OF CAL. BUS. & PROF. CODE § 17200**.

**JURY TRIAL DEMANDED**

COMPLAINT

Plaintiff Tagged, Inc. alleges as follows:

## INTRODUCTION

1. Tagged is a social network headquartered in San Francisco dedicated to helping people make new connections online, with more than 330 million registered users in 220 countries. Defendants operate an illegal spam enterprise that has inundated Tagged's system with millions of illegal, unsolicited messages to users, intending to entice them to visit fraudulent adult dating and pornographic websites.

2. Over the past six months, defendant Ross Goldenberg, acting through numerous aliases, has infiltrated Tagged's network by creating hundreds of thousands of fictional Tagged user profiles that send automated robot, or "bot," messages to real Tagged users. As of the filing of this complaint, over 4.5 spam million messages have been sent to Tagged's users. The messages solicit Tagged's users to visit third party adult dating or pornography websites that, in turn, attempt to trick Tagged's users into paying subscription fees. Most of these websites are hosted overseas and pay money to spammers such as Goldenberg and his network affiliates for referrals.

3. Defendants' activities violate numerous federal and state laws that directly prohibit the deceptive access of computer networks and the sending of unsolicited electronic communications to third parties over the internet. *See, e.g.*, Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003 (the "CAN-SPAM" Act), 15 U.S.C. § 7701 *et seq.*; the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.*

4. Through this action, Tagged seeks to permanently enjoin Defendants' illegal activities, and to obtain compensatory and punitive damages.

## THE PARTIES

5. Plaintiff Tagged, Inc. is a Delaware corporation with its principal place of business in San Francisco, California. Tagged operates a successful social networking website with hundreds of millions of subscribers located all over the world.

6. Defendant Rostislav "Ross" Goldenberg is an individual residing in Brooklyn, New York. Upon information and belief, Goldenberg acts through various aliases and/or alter egos, including but not limited to, "John Baker," "Donald Westin" and "Jose Castrellon." He has

used these aliases or alter egos to register hundreds of thousands of fake user accounts on Tagged's network in order to send spam messages to Tagged's legitimate users.

7. Goldenberg is aided and abetted and supported by the following "Doe" Defendants 1-200:

    a. Does 1-50 are affiliated spammers (collectively, the "Affiliate Spammers") that help Goldenberg register domain names and send spam to Tagged's users. They also help operate the domains that redirect users that have been tricked into clicking on links to Defendants' other fraudulently marketed websites.

    b. Does 51-100 are affiliated program businesses (collectively, the "Affiliate Programs") that work with Goldenberg and the Affiliate Spammers to spam Tagged's users in order to direct them to third party adult dating and pornographic websites in exchange for financial compensation. The Affiliate Programs are essentially lead generation marketers that provide information and technology to Goldenberg and the Affiliate Spammers to enhance their ability to send spam to hundreds of thousands of Tagged users and, upon information and belief, other third party users. The Affiliate Programs pay Goldenberg and the Affiliate Spammers for traffic directed to the fraudulent pornography websites.

    c. Does 101-200 are adult dating and/or pornographic websites such as www.ihookup.com, www.xxxblackbook.com, and www.sexplaycam.com that pay Goldenberg and/or the Affiliate Programs to direct internet traffic to their fraudulently marketed websites and defraud subscribers for financial gain.

8. Defendants Goldenberg and Does 1-200 act in concert with one another and conspire together for the improper purpose of spamming and defrauding Tagged and its users. Upon information and belief, each Defendant is aware of the other's activities and actively aids and abets the other(s) and provides substantial assistance in pursuit of their common objective of reaping economic benefits from their concerted improper spamming activities directed against Tagged and its users.

9. Tagged presently does not have sufficient information regarding the names and identities of the Doe Defendants. On information and belief, each of the Doe Defendants

1  participated in, ratified, endorsed, facilitated, or was otherwise involved in the acts complained of,
2  and that each has liability for such acts. Tagged will amend this Complaint if and when the
3  identities of such persons or entities and the scope of their actions become known.

## JURISDICTION AND VENUE

4
5  10.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.
6  §§ 1331 and 1338 because Plaintiff alleges violations of federal statutes, including 15 U.S.C.
7  § 7701, *et seq.* (CAN-SPAM Act), and 18 U.S.C. § 1030 (Computer Fraud and Abuse Act).
8  11.  The Court has supplemental subject matter jurisdiction over the remaining claims
9  under 28 U.S.C. § 1367.
10 12.  The Court has personal jurisdiction over Defendants because they induced,
11 initiated and/or transmitted spam, and/or created false user accounts, through Tagged's servers,
12 located in San Francisco, California.
13 13.  Venue in the Northern District of California is proper pursuant to 28 U.S.C.
14 § 1391(b)(2) because a substantial part of the claims, damages, and events giving rise thereto
15 occurred in this District.

## INTRADISTRICT ASSIGNMENT

16
17 14.  Intradistrict Assignment is proper in the San Francisco or Oakland Division of this
18 Court pursuant to Local Rules 3-2(c) and (d) and 3-5(b).

## FACTUAL BACKGROUND

19
20 **A.  Tagged's Social Network Is Designed to Prevent Defendants' Fraudulent Spam**
21 15.  Tagged owns and operates the popular social networking site www.tagged.com.
22 Tagged requires that all users complete a registration process before accessing and using its social
23 networking site to communicate with other Tagged users. This registration process is intended in
24 part to prevent individuals such as Goldenberg from creating false user accounts to send spam or
25 other deceptive messages to Tagged's legitimate subscribers.
26 16.  In order to access the Tagged social network, users must create an account by
27 providing their first and last name, gender, birthdate, zip code, valid e-mail address and choose a
28

3
COMPLAINT

password. In the alternative, users may register by signing in through Facebook with their Facebook credentials.

17. Tagged users agree to be bound by Tagged's Terms of Service ("TOS") before their account can be activated. After agreeing to the TOS, Tagged's users are granted a limited, non-assignable license to access and use Tagged's website and services, subject to acceptance of and compliance with the TOS.

18. Pursuant to the TOS, members are given access to use Tagged's social network solely for social purposes and are expressly prohibited from using Tagged.com for unlawful and/or commercial purposes. Tagged's TOS specifically provides that "Members shall not use any portion of the Tagged website or the Services to post, upload, email, transmit or otherwise make available junk mail, commercial advertisements, or any other form of commercial solicitation."

19. The TOS also contains an explicit "No Spam Policy," which "prohibit[s] all users from engaging in any activity involving spam" on the Tagged website or through Tagged's services. Users agree that a violation of the Policy "may result in immediate termination of service and legal action against any spammer."

20. Tagged's "No Spam Policy" specifically warns users that sending unsolicited email advertisements to or through the Tagged.com computer systems is a violation of Tagged's policies and may subject the sender of spam to civil and criminal penalties under certain federal and state laws, including the Computer Fraud and Abuse Act, Section 502 of the California Penal Code and Section 17538.45 of the California Business and Professions Code.

21. Tagged's TOS also prohibits members from misrepresenting their identity or impersonating any other person or entity.

22. Once the registration process is complete, members are given access to the Tagged networking website and can begin communicating with other Tagged users.

23. Registered members can communicate with each other through a variety of methods, including sending instant electronic messages to other Tagged users. Within the Tagged system, users may only be contacted by other registered Tagged users, or Tagged itself.

### B. Defendants Defrauded Tagged for Financial Gain

24. Despite the safeguards and firewalls employed by Tagged to prevent Defendants' illegal spam, some of their messages have succeeded in reaching Tagged's users.

25. Since approximately August 2012, Defendants, led by Goldenberg, have engaged in an ongoing and continuous campaign of sending millions of deceptive instant messages to Tagged users. They used automated software to create more than 200,000 fake user accounts on Tagged's social network. Using these fake accounts, Defendants sent approximately 4.5 million spam messages to more than 1,000,000 individual Tagged users. All of Defendants' spam messages falsely purport to be from legitimate Tagged users. The spam messages invite real Tagged users to follow hyperlinks that claim to lead to photographs or live or recorded video of other purported Tagged users.

26. Tagged users who click on the hyperlinks in the spam messages are ultimately directed to various pornographic and/or adult dating websites including www.ihookup.com, www.xxxblackbook.com, and www.sexplaycam.com. These websites purport to allow users to access and view sexually graphic images of men and women, view pornographic videos, and locate other people interested in sexual encounters.

27. The operators of these fraudulently marketed websites do not to disclose to potential users that the websites have either few or no actual users with whom to interact. Rather, the operators of these websites hide the truth by creating fictional user profiles and sending automated messages to potential users to deceive them into paying subscription fees to join the websites and/or to upgrade their free user accounts. Only after a person pays to join and/or upgrade their account does it become apparent that the person with whom they thought they were communicating does not actually exist.

28. On information and belief, once users discover they have been deceived and attempt to cancel their subscriptions to these websites, they are often prevented from doing so because the websites either do not provide customer service information on how to cancel subscriptions or they ignore cancellation requests. Instead, users are forced to contest the charges with their credit card

companies, sometimes taking up to several months, all the while the fraudulently marketed websites continue to charge users' accounts.

29. On information and belief, the owners of these fraudulently marketed websites paid the Affiliate Programs Defendants to direct traffic to the websites. In turn, the Affiliate Programs have provided the Affiliate Spammers, including Goldenberg, with computer software and other automated devices and programs that the Affiliate Spammers use to create fake user accounts and to initiate or otherwise assist in sending millions of spam messages to Tagged users. Additionally, the Affiliate Programs paid the Affiliate Spammers commissions for each person that registered and/or subscribed to the fraudulently marketed websites.

30. On information and belief, Defendant Goldenberg is a member of an Affiliate Program which pays him a commission for each Tagged user that: (a) clicks on a hyperlink contained within Defendant Goldenberg's messages; (b) registers for an account with specified websites; or (c) pays a subscription fee to join and/or upgrade their account with specified websites.

### C. Defendants' Illegal Activities Are Well Coordinated

31. Defendants' spam operation is nothing more than a high-tech, high-volume lead generation business that deceives Tagged's users into visiting websites that charge fraudulent subscription fees for services they will never receive.

32. Defendant Goldenberg and his Affiliated Spammers are paid money by their Affiliate Programs to direct internet traffic to websites that sell products or subscriptions. In addition to paying the Affiliate Spammers a commission based on the amount of traffic generated, the Affiliate Programs provide technological support to assist the Affiliate Spammers in sending millions of spam messages as part of a spam campaign.

33. To wage a spam campaign, Defendants register a domain such as "lustcitylife.com" with a domain registrar like Go Daddy. Once the domain is registered, Goldenberg and his Affiliate Spammers can create email addresses associated with the domains (*e.g.*, spammer@lustcitylife.com). Using software, Defendants send emails to numerous individuals, and to cast a wider net, they also create fake user profiles on social networking websites using these email addresses associated with their domains.

34. Goldenberg and his Affiliated Spammers then send out spam messages. The spam messages contain messages intended to lure the recipient to visit a website which was registered by an Affiliate Spammer. Often, the spam messages appear to be from real people but are in fact automated messages.

35. When the recipient of the spam message clicks on the website registered by Goldenberg and his Affiliate Spammers, they are redirected, without their knowledge, through a series of interstitial domains, some of which are owned by the Affiliate Spammer, others of which are owned by the Affiliate Program, before the user ends up at the final website (*e.g.*, one of the fraudulently marketed websites). As the traffic moves through the interstitial domains, information is encoded allowing the destination website to know which Affiliate Program directed the traffic to it. The encoded information also allows the Affiliate Program to know which Affiliate Spammer directed the traffic to the final website.

36. On information and belief, once the destination site collects money from the user through the sale of a product or a subscription, a portion of the sale is paid to the Affiliate Program, who in turn pays a commission to the Affiliate Spammer. A visual representation of Defendants' scheme is as follows:



### D. Tagged Has Suffered Substantial Damages

37. Defendants' concerted and ongoing illegal activities have damaged Tagged in an amount to be proved at trial, but not less than $1 million. Defendants have injured Tagged by causing it: (a) to expend significant sums of money on hardware and software repairs and upgrades to protect its users against further spam messages; (b) to hire employees to monitor and stop Defendants from initiating spam messages; (c) to lose users from its social networking site; (d) to lose good will and reputation with its customers; (e) to suffer decreased server response times; (f) to pay additional bandwidth charges due to Defendants' illegal activities; and (g) to suffer other injuries to its network and users.

## CAUSES OF ACTION

### First Cause of Action
### (Violation of Controlling The Assault Of Non-Solicited Pornography And Marketing Act, 15 U.S.C. 7701 *et seq.*)

38. Plaintiff incorporates by reference the facts and allegations set forth in Paragraphs 1 through 37 as though fully set forth herein.

39. Tagged provides an internet service as defined in the CAN-SPAM Act, 15 U.S.C. § 7702(11), that enables users to access content, information, electronic mail, or other services offered over the Internet, and may also include access to proprietary content, information, and other services as part of a package of services offered to consumers.

40. Tagged's computers and the computers of its users that received Defendants' spam messages are involved in interstate and foreign commerce and communication.

41. Defendants, including Goldenberg and his Affiliate Spammers, have and continue to initiate commercial electronic mail messages by transmitting and/or procuring the initiation and transmission of spam messages, the primary purpose of which is to advertise or promote commercial products or services.

42. The commercial electronic messages initiated by Defendants contained, or were accompanied by, header information that is materially false or materially misleading because the source information comes from a fake account created by a fake person.

43. Defendants knew, or their knowledge may be fairly implied, that the spam messages would be likely to mislead a recipient about a material fact regarding the contents or subject matter of the messages.

44. Defendants initiated commercial electronic mail messages that would be viewed on a protected computer that did not contain clear and conspicuous identification that the messages are advertisements or solicitations, or clear and conspicuous notice of the opportunity to decline to receive further commercial electronic mail messages from the sender.

45. Defendants initiated the transmission to a protected computer of commercial electronic mail messages, with actual knowledge, or knowledge fairly implied, that the electronic mail address of the recipient was obtained using an automated means that generates possible electronic mail addresses by combining names, letters, or numbers into numerous permutations.

46. Defendants used automated means to register for multiple electronic mail accounts or online user accounts from which to transmit to a protected computer, or enable another person to transmit to a protected computer, commercial electronic mail messages.

47. Tagged is entitled to the greater of its actual monetary loss or statutory damages as provided by 15 U.S.C. § 7706(g)(1)(B), in an amount to be proven at trial.

48. Tagged is entitled to an award of aggravated damages in an amount equal to three times the amount otherwise available pursuant to 15 U.S.C. § 7706(g)(3)(C) because Defendant violated CAN-SPAM willfully and knowingly and Defendant's unlawful activity included one or more of the aggravated violations set forth in 15 U.S.C. § 7704(b), including violations of 15 U.S.C. § 7704(b)(1)(A)(ii) and 15 U.S.C. § 7704(b)(1)(B)(2).

49. Tagged is entitled to reasonable costs, including reasonable attorneys' fees as provided by 15 U.S.C. § 7706(g)(4).

### Second Cause of Action
### (Violation of Computer Fraud and Abuse Act, 18 U.S.C. § 1030)

50. Plaintiff incorporates by reference the facts and allegations set forth in Paragraphs 1 through 49 as though fully set forth herein.

51. Tagged's computers are involved in interstate and foreign commerce and communication.

52. Defendants knowingly, and with intent to defraud, accessed Tagged's computers without authorization, and by means of such conduct furthered the intended fraud and obtained a thing of value (other than the use of the computers).

53. Defendants knowingly caused the transmission of a program, information, code, or command, and as a result of such conduct, intentionally caused damage without authorization.

54. Defendants intentionally accessed Tagged's computers without authorization, and as a result of such conduct, caused damage and loss.

55. Defendants' actions have caused loss to one or more persons, including but not limited to Tagged, in a one year period aggregating well over $5,000 in value.

56. Defendants conspired with one another to commit the above fraud, as described in Paragraphs 31 through 37 above, thereby making all Defendants liable. Specifically, the Affiliate Programs provided the technology and economic incentives to Goldenberg and his Affiliate Spammers to spam Tagged's users. The adult dating and/or pornographic websites, in turn, paid money to the Affiliate Programs and/or Goldenberg and the Affiliate Spammers for their illegal solicitation of Tagged's users. On information and belief, each of these Defendants have specific knowledge of Goldenberg's spamming activities and actively support them.

57. Defendants' conduct has also caused irreparable harm and injuries to Tagged, and, unless enjoined, will cause further irreparable injury, for which Tagged has no adequate remedy at law. Under 18 U.S.C. § 1030(g), Tagged is entitled to injunctive relief, compensatory damages, and other equitable relief.

### Third Cause of Action
### (Violation of Cal. Bus. & Prof. Code § 17529.5)

58. Plaintiff incorporates by reference the facts and allegations set forth in Paragraphs 1 through 57 as though fully set forth herein.

59. Tagged's services include is an electronic messaging. It is an intermediary in sending and receiving these electronic messages and provides to end users of the electronic messaging service the ability to send or receive electronic messages.

60. Defendants sent electronic messages either from California or sent to a California, which contained commercial advertisements.

61. Defendants' advertisements contained or were accompanied by falsified, misrepresented, and/or forged header information in violation of California and Professions Code § 17529.5(a)(2).

62. Defendants' advertisements had subject lines that Defendants knew would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the messages in violation of California Business and Professions Code § 17529.5(a)(3).

63. Defendants conspired with one another to commit the above fraud, as described in Paragraphs 31 through 37 above, thereby making all Defendants liable. Specifically, the Affiliate Programs provided the technology and economic incentives to Goldenberg and his Affiliate Spammers to spam Tagged's users. The adult dating and/or pornographic websites, in turn, paid money to the Affiliate Programs and/or Goldenberg and the Affiliate Spammers for their illegal solicitation of Tagged's users. On information and belief, each of these Defendants have specific knowledge of Goldenberg's spamming activities and actively support them.

64. As a result of Defendants' misconduct, Tagged is entitled to actual and liquidate damages, and its reasonable attorneys' fees and costs.

**Fourth Cause of Action**
**(Violation of Cal. Penal Code § 502)**

65. Plaintiff incorporates by reference the facts and allegations set forth in Paragraphs 1 through 64 as though fully set forth herein.

66. Tagged is the owner or lessee of the computers, computer systems, computer network, computer programs, and data that operate the Tagged.com website and services.

67. Defendants, including Goldenberg and his Affiliate Spammers, knowingly accessed and without permission altered, damaged, deleted, destroyed, or otherwise used Tagged's data, computer, computer system, or computer network in order to either (a) devise or execute a scheme or artifice to defraud or deceive or (b) wrongfully control or obtain money, property, or data.

68. Defendants, including Goldenberg and his Affiliate Spammers, knowingly accessed and without permission took, copied, or made use of data from a Tagged computer, computer system, or computer network, or took or copied supporting documentation, whether existing or residing internal or external to a Tagged computer, computer system, or computer network.

69. Defendants, including Goldenberg and his Affiliate Spammers, knowingly and without permission used or caused to be used computer services. Defendants also knowingly and without permission accessed or caused to be accessed a computer, computer system, or computer network.

70. Defendants conspired with one another to commit the above violations, thereby making all Defendants liable. Specifically, the Affiliate Programs provided the technology and economic incentives to Goldenberg and his Affiliate Spammers to spam Tagged's users. The adult dating and or pornographic websites, in turn, paid money to the Affiliate Programs and/or Goldenberg and the Affiliate Spammers for their illegal solicitation of Tagged's users. On information and belief, each of these Defendants have specific knowledge of Goldenberg's spamming activities and actively support them.

71. Tagged has suffered and continues to suffer damage as a result of Defendants' conduct as alleged above.

72. Defendants' conduct also has caused irreparable harm and injuries to Tagged, including but not limited to Tagged's reputation and goodwill, and unless enjoined, will cause further irreparable injury, for which Tagged has no adequate remedy at law.

73. Defendants conspired with one another to commit the above fraud, as described in Paragraphs 31 through 37 above, thereby making all Defendants liable. Specifically, the Affiliate Programs provided the technology and economic incentives to Goldenberg and his Affiliate Spammers to spam Tagged's users. The adult dating and/or pornographic websites, in turn, paid

money to the Affiliate Programs and/or Goldenberg and the Affiliate Spammers for their illegal solicitation of Tagged's users. On information and belief, each of these Defendants have specific knowledge of Goldenberg's spamming activities and actively support them.

74. Defendants willfully engaged in the above violations in derogation of Tagged's rights and the rights of legitimate Tagged users, and Defendants' actions as alleged herein were carried out with oppression, fraud and malice.

## Fifth Cause of Action
### (Fraud and Deceit)

75. Plaintiff incorporates by reference the facts and allegations set forth in Paragraphs 1 through 74 as though fully set forth herein.

76. By engaging in the above conduct, Defendants, including Goldenberg and his Affiliate Spammers, falsely represented themselves to Tagged and its users as legitimate individuals seeking to use Tagged.com for social networking purposes. For example, using the domain ani514.net, registered by Goldenberg, Goldenberg sent or caused to be sent a spam message to a real Tagged user that said, "i need to get off. but msg me on 'lykasexy' go to: http://creamkamz.info." In another instance using the same domain, Goldenberg sent or caused to be sent a spam message to a real Tagged user that said, "i need to work now, but go to: WWW.CREAMKAMZ.INFO:80 and find me on 'lykasexy'."

77. These representations were false. They were not legitimate users accessing Tagged for social networking purposes. Rather, Defendants, including Goldenberg and his Affiliate Spammers, created fake user accounts to send spam messages designed to trick legitimate Tagged users into going to fraudulently marketed websites.

78. Defendants knew that their representations were false when they made them because they knew they were creating hundreds of thousands of fake user accounts for the purpose of sending commercial messages in violation of Tagged's TOS. Moreover, Tagged requires users to read its TOS before creating user accounts.

79. Defendants intended for Tagged to rely on their misrepresentations so that they could create users accounts and obtain access to the Tagged social network.

80. Tagged reasonably relied on Goldenberg's and his Affiliate Spammers' misrepresentations when it permitted the Affiliate Spammers to create and maintain Tagged user accounts and communicate with Tagged users.

81. More than one million Tagged users have received deceptive and fraudulent commercial messages from Goldenberg and his Affiliate Spammers. A substantial number of Tagged users have been deceived into following the hyperlinks to websites provided in the Affiliate Spammers' fraudulent messages.

82. Defendants conspired with one another to commit the above fraud, as described in Paragraphs 31 through 37 above, thereby making all Defendants liable. Specifically, the Affiliate Programs provided the technology and economic incentives to Goldenberg and his Affiliate Spammers to spam Tagged's users. The adult dating and/or pornographic websites, in turn, paid money to the Affiliate Programs and/or Goldenberg and the Affiliate Spammers for their illegal solicitation of Tagged's users. On information and belief, each of these Defendants have specific knowledge of Goldenberg's spamming activities and actively support them.

83. Tagged has been damaged by Defendants' misconduct as described above.

84. Defendants' conduct was undertaken with the intent to injure Tagged, or with a willful and conscious disregard of Tagged's rights, and knowledge thereof, and constitutes clear and convincing evidence of oppression, fraud and malice under California Civil Code § 3294. As a result, Tagged is entitled to an award of punitive damages against Defendants in an amount sufficient to deter them and others from future misconduct.

### Sixth Cause of Action
### (Violation of Cal. Bus. & Prof. Code § 17200 *et seq.*)

85. Plaintiff incorporates by reference the facts and allegations set forth in Paragraphs 1 through 84 as though fully set forth herein.

86. By the acts described above, Defendants, including Goldenberg and his Affiliate Spammers, have engaged in unlawful, fraudulent, and unfair business practices and have performed unfair, unlawful, and fraudulent acts in violation of California Business and Professions Code Sections 17200 *et seq.*, causing injury to Tagged and its business and property.

87. Unless enjoined, Defendants' actions will continue to cause injury to Tagged. Accordingly, Tagged is entitled to temporary, preliminary and permanent injunctive relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court issue the following relief:

A. Injunctive relief.

B. Constructive Trust.

C. Damages, including, but not limited to, actual damages, compensatory damages, liquidated damages, statutory damages, aggravated damages, punitive damages, and treble damages.

D. Disgorgement of profits.

E. Attorneys' fees and costs.

F. All such other and further relief as the Court may deem just, proper, and equitable.

Dated: May 16, 2013                         BRAUNHAGEY & BORDEN LLP

                                            By: _____
                                                J. Noah Hagey

                                            Attorneys for Plaintiff Tagged, Inc.

## DEMAND FOR JURY TRIAL

Pursuant to Civil Local Rule 3-6 and Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a jury trial of all claims and causes of action triable before a jury.

Dated: May 16, 2013                         BRAUNHAGEY & BORDEN LLP

                                            By: _____
                                                J. Noah Hagey

                                            Attorneys for Plaintiff Tagged, Inc.